**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

HECTOR PALACIO, individually and on behalf
of all others similarly situated,

               Plaintiff,

     -against-

E*TRADE FINANCIAL CORPORATION and
E*TRADE BROKERAGE SERVICES, INC.,

            Defendants.

CASE NO. 10-CV-4030 (RJH)

**DEFENDANTS E*TRADE FINANCIAL CORPORATION AND**
**E*TRADE BROKERAGE SERVICES, INC.'S MEMORANDUM OF LAW**
**<u>IN SUPPORT OF THEIR MOTION TO TRANSFER VENUE</u>**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .................................................................................................... 1

II.    FACTUAL BACKGROUND ..................................................................................... 3

III.   ARGUMENT ............................................................................................................ 5

     A.     The Court Should Transfer This Action To The United States District
           Court for the Southern District Of Florida ............................................................ 5

          1.     The Southern District of Florida Is a Proper Forum ................................ 7

          2.     The Parties Agreed to Resolve All Disputes In Binding Arbitration
                Or, Alternatively, In The State Or Federal Court In The County
                Where Plaintiff Worked ............................................................................ 7

          3.     Palacio's Choice of Forum Is Not Entitled To Deference ........................ 9

          4.     The Convenience Factors Weigh Heavily in Favor of Transfer .............. 13

          5.     The Locus of Operative Facts – Fort Lauderdale, Florida – Weighs
                Heavily in Favor of Transfer .................................................................... 16

          6.     The Interests of Justice and Trial Efficiency Weigh Heavily in
                Favor of Transfer. .................................................................................... 17

IV.    CONCLUSION ....................................................................................................... 19

# TABLE OF AUTHORITIES

## CASES

Abney v. GE Co.,
No. 08-cv-7344, 2009 WL 1181300 (S.D.N.Y. May 4, 2009) ........................................................9

Adeva v. Intertek USA INC.,
No. 04-cv-06973, 2009 WL 648620 (E.D.N.Y. Mar. 10, 2009)....................................................10

Albert Fadem Trust v. Duke Energy Corp.,
214 F. Supp. 2d 341 (S.D.N.Y. 2002)............................................................................................6

Amick v. Amex Travel Related Services Co., Inc.,
No. 09-civ-9780, 2010 WL 307579 (S.D.N.Y. Jan. 26, 2010) ....................................................17

Associate Mills, Inc. v. Rush-Hampton Industrial, Inc.,
588 F. Supp. 1164 (N.D. Ill. 1984) ...............................................................................................15

Bassili v. Chu,
242 F. Supp. 2d 223 (W.D.N.Y. 2002) ...........................................................................................5

Berman v. Informix Corp.,
30 F. Supp. 2d 653 (S.D.N.Y. 1998)........................................................................................10, 13

Bynum v. National R.R. Passenger Corp.,
No. 93-cv-06180, 1994 WL 62848 (S.D.N.Y. Feb. 22, 1994) .....................................................10

Cal. Innovations, Inc. v. Travelers Club Luggage, Inc.,
No. 06-06482, 2006 WL 2864016 (W.D.N.Y. Oct. 4, 2006) .................................................13, 17

City of Pontiac General Employees' Retirement System v. Stryker Corp.,
No. 10-cv-376, 2010 WL 2035130 (S.D.N.Y. May 21, 2010) ...................................................7, 9

Clesi v. Zinc Corp. of America,
No. 00-cv- 6786, 2001 WL 1223456 (S.D.N.Y. Mar. 2, 2001)....................................................14

Commercial Solvents Corp. v. Liberty Mutual Insurance Co.,
371 F. Supp. 247 (S.D.N.Y. 1974)................................................................................................15

Computer Horizons Corp. v. Knauer,
483 F. Supp. 1272 (S.D.N.Y. 1980)................................................................................................6

Cont'l Grain Co. v. Barge FBL-585,
364 U.S. 19 (1960).........................................................................................................................5

Cuzzupoli v. Metro-North Commuter R.R.,
No. 02 CIV. 7947, 2003 WL 21496879 (S.D.N.Y. June 30, 2003)................................................13

D.H. Blair & Co. v. Gottdiener,
462 F.3d 95 (2d Cir. 2006).................................................................................................................6

Eichenholtz v. Brennan,
677 F. Supp. 198 (S.D.N.Y. 1988).................................................................................................10

Eres N.V. v. Citgo Asphalt Refining Co.,
605 F. Supp. 2d 473 (S.D.N.Y. 2009).............................................................................................10

Essex Crane Rental Corp. v. Vic Kirsch Construction Co.,
486 F. Supp. 529 (S.D.N.Y. 1980)...................................................................................................6

Farrior v. George Weston Bakeries Distributing,
No. 09-cv-00298, 2009 WL 113774 (E.D.N.Y. Jan. 15, 2009)......................................................6

Freeman v. National Broad. Co.,
80 F.3d 78 (2d Cir. 1996) ...............................................................................................................13

Glass v. S&M NuTec,
456 F. Supp. 2d 498 (S.D.N.Y. 2006)..............................................................................................6

Hall v. S. Orange,
89 F. Supp. 2d 488 (S.D.N.Y. 2000)...............................................................................................17

Hoffman v. Blaski,
363 U.S. 335 (1960)...........................................................................................................................7

Indian Harbor Insurance Co. v. Factory Mutual Insurance Co.,
419 F. Supp. 2d 395 (S.D.N.Y. 2005)................................................................................6, 13, 18

Jones v. Weibrecht,
901 F.2d 17 (2d Cir. 1990)................................................................................................................9

M/S Bremen v. Zapata Off-Shore Co.,
407 U.S. 1 (1972)...............................................................................................................................8

Manao Investments v. Stouts Brunswick Associates Ltd. Partnership,
No. 96 CIV. 7100, 1997 WL 53200 (S.D.N.Y. Feb. 10, 1992)....................................................17

Mike v. Safeco Insurance Co. of America,
274 F. Supp. 2d 216 (D. Conn. 2003) ........................................................................13

Montgomery v. Tap Enterprises, Inc.,
No. 06-cv-05799, 2007 WL 576128 (S.D.N.Y. Feb. 26, 2007) ..................................12

Morisky v. Public Serv. Electric & Gas Co.,
111 F. Supp. 2d 493 (D.N.J. 2000) ............................................................................14

Napier v. Bossard,
102 F.2d 467 (2d Cir. 1939)........................................................................................15

National Prop. Investors v. Shell Oil,
917 F. Supp. 324 (D.N.J. 1995) .................................................................................16

New Moon Shipping Co., Ltd. v. MAN B &W Diesel AG,
121 F.3d 24 (2d Cir. 1997)...........................................................................................9

Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.,
85 F. Supp. 2d 282 (S.D.N.Y. 2000)..........................................................................17

Phillips v. Audio Active Ltd.,
494 F.3d 378 (2d Cir. 2007).........................................................................................8

Piper Aircraft Co. v. Reyno,
454 U.S. 235 (1981)......................................................................................................5

Ravenswood Investment Co. v. Bishop Capital Corp.,
No. 04-cv-09266, 2005 WL 236440 (S.D.N.Y. Feb. 1, 2005) ....................................16

Roby v. Corp. of Lloyd's,
996 F.2d 1353 (2d Cir. 1993)........................................................................................8

In re Saltire Industrial, Inc.,
No. 07-cv-3622, 2007 WL 1815450 (S.D.N.Y. June 22, 2007) ...................................6

Saminsky v. Occidental Petrol. Corp.,
373 F. Supp. 257 (S.D.N.Y. 1974).........................................................................6, 16

In re Stillwater Mining Co. Sec. Litigation,
No. 02-cv-02806, 2003 WL 21087953 (S.D.N.Y. May 12, 2003) ...............................16

Topolnycky v. Ukrainian Savings & Loan Association,
No. 90-878, 1991 WL 117397 (W.D.N.Y. June 12, 1991)............................................................15

Unique Industrial, Inc. v. Lisa Frank, Inc.,
No. 93-cv-08037, 1994 WL 525041 (S.D.N.Y. Sept. 23, 1994) ....................................................12

Viacom International, Inc. v. Melvin Simon Products, Inc.,
774 F. Supp. 858 (S.D.N.Y. 1991)......................................................................................................6

Warrick v. General Electric Co.,
70 F.3d 736 (2d Cir. 1995)................................................................................................................12

Yakin v. Tyler Hill Corp.,
566 F.3d 72 (2d Cir. 2009)..................................................................................................................8

ZPC 2000, Inc. v. SCA Group, Inc.,
86 F. Supp. 2d 274 (S.D.N.Y. 2000)..................................................................................................16

Zokaites v. Land-Cellular Corp.,
424 F. Supp. 2d 824 (W.D. Pa. 2006)................................................................................................18

## STATUTES

28 U.S.C. § 1391(b) .............................................................................................................................7

28 U.S.C. § 1404(a) .................................................................................................................1, 3, 5, 7

29 U.S.C. § 216(b) .............................................................................................................................11

## RULES

Fed. R. Civ. P. 45(b)(2), (c)(3) & (e)................................................................................................15

Pursuant to 28 U.S.C. 1404(a), Defendants E*TRADE Financial Corporation ("ETFC") and E*TRADE Brokerage Services, Inc. ("E*TRADE") move to transfer venue to the United States District Court for the Southern District of Florida.

## I.      <u>INTRODUCTION</u>

Plaintiff Hector Palacio asserts a single cause of action for overtime under the Fair Labor Standards Act ("FLSA").  Palacio's claim for overtime relates solely to his employment by E*TRADE as a relationship manager in its Fort Lauderdale, Florida branch.  Palacio never worked for E*TRADE in New York.  Palacio has retained Florida counsel.  Rather than file this action in the Southern District of Florida, however, which Court is less than a mile from the Fort Lauderdale branch where Palacio worked, he and his counsel have filed this case over 1,000 miles away in the Southern District of New York.

Defendants respectfully request that the Court transfer this case to the Southern District of Florida.  Initially, Palacio entered into a valid arbitration agreement with E*TRADE and Defendants will move to compel arbitration once the issue of transfer has been resolved. Moreover, Palacio's arbitration agreement also provides that should the arbitration agreement not be enforceable for any reason, he agrees that any disputes shall be resolved in the state or federal court where he worked, which in this case would be the Southern District of Florida.

In addition, the witnesses and documents that will be central to Palacio's overtime claim and E*TRADE's defenses to that claim are located in and around Fort Lauderdale.  Although E*TRADE classified Palacio as exempt from overtime, Palacio alleges that his job duties did not qualify for any exemption from overtime under the applicable standards.  The issues that will need to be decided to adjudicate Palacio's claim for overtime will be:

(1)      what job duties did Palacio actually perform on a day-to-day basis?

(2)     do those duties satisfy the various criteria for him to have been exempt from overtime?

(3)     if not, did Palacio worked any overtime (more than 40 hours in any workweek) and, if so, how much?

The witnesses that will be central to these determinations include Palacio's direct supervisor (the branch manager of the Fort Lauderdale branch), and various other employees in the Fort Lauderdale branch who observed him performed his job duties and saw the hours he worked.  All of these individuals are located in and around Fort Lauderdale.  Similarly, documents that will be central to these determinations include documents created by Palacio and his supervisor, and communications between them, regarding the performance of Palacio's job duties, which are maintained and accessible from the Fort Lauderdale branch.

The fact that Plaintiff has pled this case as a putative collective action under the FLSA does not change the fact that this case should be transferred to the place where Palacio worked.  Indeed, courts afford a plaintiff's choice of forum <u>less</u> deference in putative class and collective actions, and where, like here, the plaintiff does not reside in (or anywhere close to) the chosen forum.  Moreover, no determination has been made that this case may proceed as a collective action and Defendants adamantly believe that this case may not be maintained as a collective action.  However, even if this case were not compelled to arbitration, and even if Palacio could maintain the case as a collective action, there is no reason to believe that anyone from New York will join the case, much less that so many New Yorkers would join that it would shift the focus of this case from Florida.  To date, three individuals have purported to join the case by filing a Consent to Sue (although no determination has been made that they may do so) – two from Florida and one from Texas.  Moreover, only three of E*TRADE's 28 branches are in New York

(only two of which are in this judicial District).  The rest are primarily in Florida and other parts of the South and West.

The Court should transfer this action to the Southern District of Florida because Florida is the center of Palacio's claims.  The primary witnesses and documents that will be involved in Palacio's claim for overtime are virtually next door to the District Court in the Southern District of Florida, but are over 1,000 miles from this Court.  These witnesses should not be put to the burden of traveling to New York, nor should this Court or the people of New York be put to the burden and expense of litigating a Florida dispute in New York.

For these reasons, as described more fully below, Defendants respectfully request that the Court transfer this action to the Southern District of Florida, pursuant to 28 U.S.C. § 1404(a).

## II.     FACTUAL BACKGROUND

E*TRADE employed Palacio as a relationship manager in its Fort Lauderdale branch from approximately October 2007 to November 2008.  (Declaration of Robert Russini ("Russini Decl.") ¶ 2).  Palacio alleges that during his employment as a relationship manager in Fort Lauderdale, he should have been paid overtime compensation under the FLSA.  (Compl. ¶ 1).

Robert Russini, the branch manager for the Fort Lauderdale branch, worked in the same branch as Palacio and supervised him on a daily basis.  (Russini Decl. ¶¶ 6-7).  Both Russini and Palacio created, sent, received, or maintained numerous documents and communications relating to Palacio and his job duties, which continue to be maintained and accessible from Russini's computer in the Fort Lauderdale branch.  (Russini Decl. ¶ 13).  Russini also maintained a supervisor file with respect to Palacio, which he has retained in the Fort Lauderdale branch.  (Russini Decl. ¶ 13).  Palacio worked along side numerous other relationship managers and other employees in the Fort Lauderdale branch.  (Russini Decl. ¶ 12).  Plaintiff, Russini, and the others who worked in the Fort Lauderdale branch with them will be the primary witnesses with respect

to the fact issues at the heart of this case – the job duties actually performed by Palacio on a day-to-day basis, and the hours he worked.  All of those witnesses are located in and around Fort Lauderdale.  (Russini Decl. ¶ 12).  In addition, Russini reports to Regional Manager Scott Bever, who is based in Tampa.  (Russini Decl. ¶ 14).

At the inception of his employment, Palacio signed an agreement that provides as follows:

> In the event of any dispute or claim arising out of or relating to your employment relationship with the Company, this agreement, or the termination of your employment with the Company for any reason (including, but not limited to, any claims of breach of contract, wrongful termination or age, sex, race, national origin, disability, religious or other discrimination, harassment or retaliation) (collectively referred to hereafter as "Disputes"), you and the Company agree that all such Disputes shall be fully, finally and exclusively resolved by binding arbitration to the fullest extent permitted by law.

(Declaration of Scott Stevenson ("Stevenson Decl.") ¶ 3, Ex. A).  The agreement further provides:

> You and the Company further agree that if, and only if, this arbitration agreement shall, for any reason, be held invalid or unenforceable, then any Dispute between us shall be resolved by means of a court trial (involving a judge but no jury) conducted by the state or federal court for the county in which the Company office in which you most often work is located.

(Stevenson Decl. ¶ 3, Ex. A).

Various Human Resources functions are based in a variety of locations, including Alpharetta, Georgia.  (Declaration of John Coy ("Coy Decl.") ¶ 3).  Payroll, Compensation and Benefits are based primarily in Alpharetta.  (Coy Decl. ¶¶ 4-5).  The individual responsible for the staffing and recruiting for the Fort Lauderdale branch is also in Alpharetta.  (Russini Decl. ¶ 16).  Training for new relationship managers in the Fort Lauderdale branch is conducted in Alpharetta, and there is some ongoing training held locally, including in Tampa.  (Russini Decl. ¶ 5).  The Chief Human Resources Officer is based in Arlington, Virginia.  (Coy Decl. ¶ 8).

Although there are some Human Resources generalists in New York who handle certain responsibilities relating to the branch relationship managers, they would not have personal knowledge of the day-to-day job duties or hours worked by the relationship managers in the branches. (Coy Decl. ¶ 9). Moreover, E*TRADE's senior management at its headquarters in New York would not have personal knowledge of Palacio's employment, the job duties he actually performed on a day-to-day basis, or the hours he worked. (Russini Decl. ¶ 15).

## III. ARGUMENT

### A. The Court Should Transfer This Action To The United States District Court for the Southern District Of Florida.

The Court should exercise its broad discretion and transfer this action to the United States District Court for the Southern District of Florida, pursuant to 28 U.S.C. § 1404(a). Section 1404(a) vests a district court with broad authority to transfer an action to a more appropriate district "[f]or the convenience of parties and witnesses, [and] in the interest of justice," provided that the action "might have been brought" in the transferee district. 28 U.S.C. § 1404(a). "The primary goal of § 1404(a) is to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Bassili v. Chu, 242 F. Supp. 2d 223, 232 (W.D.N.Y. 2002) (citation omitted). Section 1404(a) also strives to prevent "wastefulness of time, energy, and money." Cont'l Grain Co. v. Barge FBL-585, 364 U.S. 19, 25 (1960). Congress enacted this provision as a "federal housekeeping measure, allowing *easy* change of venue within a unified federal system." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 (1981) (emphasis added) (internal quotations omitted).

In applying Section 1404(a)'s flexible rule governing transfer, courts within the Second Circuit focus on a variety of relevant factors, including:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties.

D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 106-7 (2d Cir. 2006); Albert Fadem Trust v. Duke Energy Corp., 214 F. Supp. 2d 341, 343 (S.D.N.Y. 2002); see also In re Saltire Indus., Inc., No. 07-cv-3622, 2007 WL 1815450 (S.D.N.Y. June 22, 2007) (transferring action to Tennessee because this District was inconvenient to the real parties in interest and the witnesses, while the Middle District of Tennessee was convenient to all involved except the Liquidating Trustee).

Although "[t]here is no rigid formula for balancing these factors and no single one of them is determinative," Indian Harbor Ins. Co. v. Factory Mut. Ins. Co., 419 F. Supp. 2d 395, 402 (S.D.N.Y. 2005), "[t]he core determination under § 1404(a) is the center of gravity of the litigation, a key test of which is the convenience of witnesses." Viacom Int'l, Inc. v. Melvin Simon Prods., Inc., 774 F. Supp. 858, 868 (S.D.N.Y. 1991); see also Saminsky v. Occidental Petrol. Corp., 373 F. Supp. 257 (S.D.N.Y. 1974) (same); Essex Crane Rental Corp. v. Vic Kirsch Constr. Co., 486 F. Supp. 529 (S.D.N.Y. 1980) (same). Moreover, "courts routinely transfer cases when the principal events occurred, and the principal witnesses are located, in another district." Id. (citing Computer Horizons Corp. v. Knauer, 483 F. Supp. 1272 (S.D.N.Y. 1980)).

Finally, "[s]ome courts have identified additional factors, including (1) 'the forum's familiarity with governing law,' and (2) 'trial efficiency and the interest of justice, based on the totality of the circumstances.'" Farrior v. George Weston Bakeries Distrib., No. 09-cv-00298, 2009 WL 113774, at *3 (E.D.N.Y. Jan. 15, 2009) (quoting Glass v. S&M NuTec, 456 F. Supp. 2d 498, 501 (S.D.N.Y. 2006)).

Here, the "center of gravity" is Fort Lauderdale, Florida, which favors transferring this action, as does the fact that the Southern District of Florida is well-positioned to handle this case in an expeditious manner.

### 1. The Southern District of Florida Is a Proper Forum.

Under Section 1404(a), a district court may transfer a civil action "to any other district or division where it might have been brought." 28 U.S.C. § 1404(a); Hoffman v. Blaski, 363 U.S. 335, 336 (1960). Thus, the threshold inquiry is whether Palacio could have brought this case in the Southern District of Florida. City of Pontiac Gen. Employees' Retirement Sys. v. Stryker Corp., No. 10-cv-376, 2010 WL 2035130, at *3 (S.D.N.Y. May 21, 2010). Palacio is claiming overtime for his work at E*TRADE's Fort Lauderdale branch, which is within the Southern District of Florida. (Russini Decl. ¶ 1). As a result, both E*TRADE and Palacio are subject to personal jurisdiction in the Southern District of Florida relating to this case, and there can be no serious dispute that a substantial part of the events underlying Palacio's claims occurred in Florida. Therefore, Palacio could have brought this case in the Southern District of Florida. 28 U.S.C. § 1391(b) (venue is proper where the defendant resides (i.e., is subject to personal jurisdiction) and where a substantial part of the events underlying the cause of action arose).

### 2. The Parties Agreed to Resolve All Disputes In Binding Arbitration Or, Alternatively, In The State Or Federal Court In The County Where Plaintiff Worked.

As noted, at the inception of his employment Palacio signed an agreement that all disputes arising out of or relating to his employment with E*TRADE would be resolved by binding arbitration. (Stevenson Decl. ¶ 3, Ex. A). The agreement further provided that "if, and only if, this arbitration agreement shall, for any reason, be held invalid or unenforceable, then any Dispute between us shall be resolved by means of a court trial (involving a judge but no

jury) conducted by the state or federal court for the county in which the Company office in which you most often work is located."  (Stevenson Decl. ¶ 3, Ex. A).

As noted, Defendants intend to move to compel Plaintiff's claim to arbitration in accordance with the valid agreement provided above.  It is clear, however, that even if this matter is not compelled to arbitration, the forum selected by the parties for this case to proceed in court is the Southern District of Florida, which encompasses the sole office where Palacio worked for E*TRADE Brokerage Services, Inc., and where he was a relationship manager. (Russini Decl. ¶ 2).

To the extent that this matter is not compelled to arbitration, the forum selection clause between the parties is valid and enforceable.  See M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972) (forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances"); Yakin v. Tyler Hill Corp., 566 F.3d 72, 76 (2d Cir. 2009) (same).  Where a forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable. Phillips v. Audio Active Ltd., 494 F.3d 378 (2d Cir. 2007) (citing Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1362-63 (2d Cir. 1993)). The forum selection clause should be enforced unless the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that "enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching."  Phillips, 494 F.3d at 383-84.

There is no dispute that the forum selection clause was communicated to Palacio and that it is mandatory.  Palacio signed the agreement, which includes the obligatory language "shall be resolved . . . ."  Phillips, 494 F.3d at 386 ("A forum selection clause is viewed as mandatory

when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language.").  In addition, the agreement in this case specifically covers "any dispute arising out of or relating to [Palacio's] employment relationship with the Company."  (Stevenson Decl. ¶ 3, Ex. A).

Accordingly, the forum selection clause is presumptively enforceable and the burden is on Palacio, as the party "who brought suit in a forum other than the one designated by the forum selection clause, to make a 'strong showing' in order to overcome the presumption of enforceability."  New Moon Shipping Co., Ltd. v. MAN B &W Diesel AG, 121 F.3d 24, 29 (2d Cir. 1997).  Palacio cannot make such a showing.  After all, he is a Florida resident who worked for E*TRADE in Florida.  He cannot demonstrate that enforcement of the forum selection clause "would be unreasonable and unjust."  Jones v. Weibrecht, 901 F.2d 17, 18 (2d Cir. 1990).  The Court, therefore, should honor the parties' forum-selection agreement and transfer this action to the Southern District of Florida.

### 3.    Palacio's Choice of Forum Is Not Entitled To Deference.

Typically, a plaintiff's choice of forum in non-class or collective actions is given some deference when challenged through a motion to transfer.  This is because it is presumed that the plaintiff's place of residence is a more convenient place for the plaintiff to litigate the action. Here, however, Palacio worked for E*TRADE in Florida and public records indicate that he continues to reside just outside of Fort Lauderdale.  (Declaration of Sean Lynch ("Lynch Decl.") ¶ 2).  The fact that Plaintiff has chosen a forum far from his own residence weighs strongly against giving his choice of venue any deference.  See City of Pontiac, 2010 WL 2035130, at *3 (deference to plaintiff's choice of forum is diminished where the plaintiff resided in Michigan, not New York); Abney v. GE Co., No. 08-cv-7344, 2009 WL 1181300, at *4 (S.D.N.Y. May 4, 2009) ("Plaintiff's chosen forum 'is given less weight where … plaintiff is not a resident of the

9

forum and the cause of action is minimally connected with the forum.'") (quoting Pierce v. Coughlin, 806 F. Supp. 426, 429 (S.D.N.Y. 1992)); see also Eichenholtz v. Brennan, 677 F. Supp. 198, 201 (S.D.N.Y. 1988) (affording little to no deference because, "[w]hile Plaintiffs have chosen this district, they do not reside here"); Adeva v. Intertek USA INC., No. 04-cv-06973, 2009 WL 648620, at *7 (E.D.N.Y. Mar. 10, 2009) ("plaintiff's choice of forum has less weight where the plaintiff does not reside in the chosen forum").

Moreover, any deference that would ordinarily be afforded to plaintiff's choice of forum is further undercut because the operative facts are centered in Florida. See Berman v. Informix Corp., 30 F. Supp. 2d 653, 659 (S.D.N.Y. 1998) (the "emphasis placed by a court on [plaintiff's] choice diminishes where the operative facts upon which the litigation is brought bear little material connection to the chosen forum"); Eres N.V. v. Citgo Asphalt Refining Co., 605 F. Supp. 2d 473, 483 (S.D.N.Y. 2009) (no deference to forum choice when "[t]here is no apparent connection between the Southern District of New York and the operative events").

Critically, Palacio cannot possibly claim that litigating in the Southern District of Florida would cause him an undue hardship or inconvenience. See, e.g., Bynum v. Nat'l R.R. Passenger Corp., No. 93-cv-06180, 1994 WL 62848, at *3 (S.D.N.Y. Feb. 22, 1994) ("Since plaintiff resides in New Jersey, he cannot claim that transferring the action to New Jersey would cause undue hardship.").

In addition, the fact that this case is pled as a putative collective action under the FLSA does nothing to alter the transfer analysis. First, as noted, there is a binding arbitration agreement in this case and Defendants intend to move to compel arbitration as soon as the motion to transfer has been decided. Second, even if the case were permitted to remain in court, there has been no determination that Plaintiff may proceed as a collective action, and Defendants

vigorously dispute that he may do so.  Third, even in the unlikely event that the case were

permitted to proceed as a collective action, notice would be sent to current and former branch

relationship managers who would join this case only if they affirmatively decided to do so by

filing their written consent with the Court.  29 U.S.C. § 216(b).  E*TRADE employs relationship

managers in branches in numerous states, including in Florida, Georgia, North Carolina, Texas,

Michigan, Colorado, Oregon, Minnesota, California, Washington State, Illinois, the District of

Columbia, Massachusetts, New Jersey, Arizona, Pennsylvania, and New York.  (Declaration of

Christina Wu ("Wu Decl.") ¶ 3).  Only three of the 28 branches operated by E*TRADE are in

New York.  (Coy Decl. ¶ 10).  Since May 2007, only 23 individuals were employed by

E*TRADE in a branch within this judicial District (which is less than 9% of relationship

managers employed in the branches during that time) and only an additional 10 more were

employed elsewhere in the State of New York.  (Wu Decl. ¶ 4).  Given the small number of

branch relationship managers in New York, there is no reason to believe that any will choose to

join this case, much less that they would do so in sufficient numbers to shift the center of gravity

of this case from Florida.

      To date, in addition to the named Plaintiff (Palacio), three individuals have filed Consents

to Sue in this case, one from Fort Lauderdale, one from Tampa, and one from Houston.  (Docket

Nos. 2, 7, and 11).  Defendants dispute that those individuals can properly join this case for a

variety of reasons, and no determination has been made that they may do so.  Moreover, each of

them also is subject to an arbitration agreement, and Defendants intend to move to compel their

claims to arbitration.[1]  Even if one considers them as part of this case, it results in this case having three plaintiffs from Florida, one from Texas, and none from New York.

Moreover, a plaintiff's choice of forum is given less deference in a class or collective action.  See Warrick v. Gen. Elec. Co., 70 F.3d 736, 741 n.7 (2d Cir. 1995) ("[P]laintiff's choice of forum is a less significant consideration in a . . . class action than in an individual action."); see also Montgomery v. Tap Enters., Inc., No. 06-cv-05799, 2007 WL 576128, at *4 (S.D.N.Y. Feb. 26, 2007) (granting transfer and noting that plaintiff's choice of forum in putative FLSA collective action was entitled to less deference: "In any case, whether plaintiffs 'opt-in' or 'opt-out' seems secondary to the ultimate convenience (or inconvenience) of the forum to the parties and witnesses involved.").

In addition, Palacio's decision not to file this case in the Court located less than a mile from where he worked and close to where he resides, and instead to file in a Court over 1,000 miles away, raises the concern that he is simply forum-shopping, which the Court should not reward.  See Unique Indus., Inc. v. Lisa Frank, Inc., No. 93-cv-08037, 1994 WL 525041, at *2 (S.D.N.Y. Sept. 23, 1994) (in granting a motion to transfer pursuant to Section 1404(a), an "important interest[] to be considered [is] the discouragement of forum shopping").

Because Palacio does not reside in this District, his choice of forum carries no weight and warrants no deference.

---

[1]  See Stevenson Decl. ¶¶ 5-6, Exs. C, D.  One of the Consents to Sue (Docket No. 11) has the name of the individual redacted and the signature is illegible.  Defendants have not been provided with an unredacted version.  If needed, Defendants can supplement the motion with this individual's arbitration and forum-selection agreement once his or her identity is disclosed.

4. **The Convenience Factors Weigh Heavily in Favor of Transfer.**

a. **The Location of Key Witnesses Weighs in Favor of Transfer.**

The Court should transfer venue because the witnesses necessary to support or refute Palacio's claims are principally located in the Southern District of Florida. "To determine whether transfer is appropriate, the Court looks to the 'center of gravity of the litigation,' as judged primarily by the convenience of witnesses." Indian Harbor Ins. Co., 419 F. Supp. 2d at 402 (quoting Cuzzupoli v. Metro-North Commuter R.R., NO. 02 CIV. 7947, 2003 WL 21496879, at *3 (S.D.N.Y. June 30, 2003)). Indeed, "[c]onvenience of both the party and the non-party witnesses is probably the single-most important factor in the analysis of whether transfer should be granted." Berman v. Informix Corp., 30 F. Supp. 2d 653, (S.D.N.Y. 1998). Consequently, courts have routinely transferred cases where the testimonial evidence necessary to the proof and defense of the operative facts underlying the plaintiff's claim is located in the proposed transferee forum. See, e.g., Cal. Innovations, Inc. v. Travelers Club Luggage, Inc., No. 06-06482, 2006 WL 2864016, at *6-7 (W.D.N.Y. Oct. 4, 2006) (transferring action to the Central District of California, where "witnesses, documents, and proof" relative to the plaintiff's claims were located).

Palacio claims that, during his employment in E*TRADE's Fort Lauderdale branch, he should have been paid overtime for any hours worked over 40 in a workweek, notwithstanding the fact that E*TRADE classified Palacio as exempt from overtime. (Compl. ¶¶ 1, 28). Whether Palacio was entitled to overtime will turn on the job duties Palacio actually performed on a day-to-day basis, and whether those duties meet the "duties tests" for the applicable exemptions. See, e.g., Freeman v. Nat'l Broad. Co., 80 F.3d 78, 82-83 (2d Cir. 1996) ("factual findings as to the nature of the plaintiffs' employment" is the heart of the exemption inquiry), Mike v. Safeco Ins. Co. of America, 274 F. Supp. 2d 216, 220 (D. Conn. 2003) ("the central question in determining

Safeco's liability will be whether the balance of tasks Mike performed on a day-to-day basis were administrative or non-administrative"); <u>Morisky v. Pub. Serv. Elec. & Gas Co.</u>, 111 F. Supp. 2d 493, 500 (D.N.J. 2000) ("To determine which employees are entitled to overtime compensation under the FLSA depends on an individual, fact-specific analysis of each employee's job responsibilities under the relevant statutory exemption criteria."). If Palacio is able to succeed on his claim that he was eligible for overtime under the FLSA, the issue will then be whether he worked any overtime and, if so, how much.

The likely witnesses who would testify as to these issues are located in Florida. For example, Palacio will undoubtedly testify with respect to his own job duties and hours worked. Palacio's direct supervisor, Robert Russini, will likewise testify to those issues based on his direct supervision of Palacio throughout his employment as a relationship manager. Palacio's co-workers in the Fort Lauderdale branch also would have knowledge of Palacio's actual job duties and hours worked and are expected to be witnesses in this case. (Russini Decl. ¶ 12).

Even if these foreign witnesses were subject to this Court's subpoena powers, "the inconvenience to those witnesses and the cost to the party subpoenaing them would be greater" than the cost of litigating in Florida. <u>Clesi v. Zinc Corp. of Am.</u>, No. 00-cv- 6786, 2001 WL 1223456, at *6 (S.D.N.Y. Mar. 2, 2001). Plainly, having to litigate this case in New York would be a significant inconvenience on these witnesses, who should not be burdened with having to travel to New York to litigate this Florida dispute.

By contrast, the Southern District of Florida's courthouse in Fort Lauderdale is less than a mile from E*TRADE's Fort Lauderdale branch. Because litigating this case in the Southern District of Florida would allow key witnesses to testify without requiring them to travel long

distances and without causing major disruption in their lives or the lives of their families (or substantial cost to either party), this factor weighs heavily in favor of transfer.

> **b.** **The Availability of Process to Compel the Attendance of Unwilling Witnesses Weighs in Favor of Transfer.**

Another factor favoring transfer is the limitation on the subpoena power of federal courts. See Fed. R. Civ. P. 45(b)(2), (c)(3) & (e) (generally limiting the subpoena power of federal courts to within 100 miles of the place of trial). Should this Court transfer venue, the Southern District of Florida would have the ability to compel most of the witnesses the parties would be likely call to testify at trial, including Palacio's direct supervisor and his co-workers from the Fort Lauderdale branch. See, e.g., Topolnycky v. Ukrainian Savings & Loan Ass'n, No. 90-878, 1991 WL 117397, at *6-7 (W.D.N.Y. June 12, 1991) (granting defendants' motion to transfer venue in part because "compelling attendance of . . . non-party witnesses may be extremely important to this case, and this Court would not have such ability"); Assoc. Mills, Inc. v. Rush-Hampton Indus., Inc., 588 F. Supp. 1164, 1167 (N.D. Ill. 1984) (ordering transfer from Illinois to Florida based, in part, on lack of compulsory process over non-party witnesses).

Thus, this potential inability to subpoena out-of-District non-party witnesses weighs in favor of transferring this case. See id.; Napier v. Bossard, 102 F.2d 467, 469 (2d Cir. 1939) ("The deposition has always been, and still is, treated as a substitute, a second-best, not to be used when the original is at hand."); Commercial Solvents Corp. v. Liberty Mut. Ins. Co., 371 F. Supp. 247, 250 (S.D.N.Y. 1974) (recognizing that "courts generally transfer cases when important witnesses cannot be compelled to testify in the forum, but could be subpoenaed in the transferee court").

### c. The Location of Relevant Documents and Relative Ease of Access to Sources of Proof Weighs in Favor of Transfer.

Further weighing in favor of transfer is the fact that the relevant records concerning Palacio's employment and job duties are located in Florida. These include Russini's supervisor file and other documents created by Palacio and his supervisor, and communications between them, regarding the performance of Palacio's job duties, which are maintained and accessible from the Fort Lauderdale branch. (Russini Decl. ¶ 13). While courts put somewhat less emphasis these days on the location of records due to the feasibility of transporting them, to the extent this factor is considered, it weights in favor of transfer. See In re Stillwater Mining Co. Sec. Litig., No. 02-cv-02806, 2003 WL 21087953, at *5 (S.D.N.Y. May 12, 2003) ("While it is true that documents can be transported from state to state, for purposes of weighing transfer factors, the fact that the documents are all currently located in [the transferee district] favors transfer."); Ravenswood Inv. Co. v. Bishop Capital Corp., No. 04-cv-09266, 2005 WL 236440, at *6 (S.D.N.Y. Feb. 1, 2005) (noting that superior access to documents is a factor that weighs in favor of transfer).

### 5. The Locus of Operative Facts – Fort Lauderdale, Florida – Weighs Heavily in Favor of Transfer.

"The core determination under Section 1404(a) is the center of gravity of the litigation." Saminsky, 373 F. Supp. at 257; see also Nat'l Prop. Investors v. Shell Oil, 917 F. Supp. 324, 327 (D.N.J. 1995) ("[A]s a general rule, the preferred forum is that which is the center of gravity of the accused activity."). In a case that centers on the Plaintiff's actual job duties and hours of work in Fort Lauderdale, clearly the gravity of the litigation is in the Southern District of Florida. ZPC 2000, Inc. v. SCA Group, Inc., 86 F. Supp. 2d 274, 279 (S.D.N.Y. 2000) ("[T]he location of operative events is a 'primary factor' in determining a motion to transfer venue") (quoting Smart v. Goord, 21 F. Supp. 2d 309, 316 (S.D.N.Y. 1998)).

The lack of any material connection to this District is a deficiency that dictates transferring this case. See Manao Invs. v. Stouts Brunswick Assocs. Ltd. Partnership, No. 96 CIV. 7100, 1997 WL 53200, at *2 (S.D.N.Y. Feb. 10, 1992) ("Where there is no material connection between the district and the operative facts, . . . the interests of justice require the transfer of [the] action."); Cal. Innovations, 2006 WL 2864016, at *7 (transferring venue because, "[o]ther than home forum, the Court finds a total absence of any factor to warrant litigation" in the Western District). The fact that the Defendants' corporate headquarters may be in New York does nothing to change the fact that the primary witnesses and documents in this case are in Florida. See Amick v. American Exp. Travel Related Services Co., Inc., No. 09-civ-9780, 2010 WL 307579, at *2 (S.D.N.Y. Jan. 26, 2010) (transferring case to Middle District of North Carolina, finding that to be "the center of gravity" of the litigation because the plaintiff's direct supervisors and co-workers were all employed in Greensboro and the only connection to the Southern District of New York was the allegation of a compensation policy that was allegedly crafted in the defendant's New York corporate headquarters); Hall v. S. Orange, 89 F. Supp. 2d 488, 494 (S.D.N.Y. 2000) (transferring venue to the District of New Jersey because "a substantial part of the events . . . occurred in . . . New Jersey" even though "events giving rise to [plaintiff's] claims occurred in the Southern District of New York").

6. **The Interests of Justice and Trial Efficiency Weigh Heavily in Favor of Transfer.**

Public interest factors influencing the interests of justice also favor transfer in this case. See, e.g., Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd., 85 F. Supp. 2d 282, 306 (S.D.N.Y. 2000) (noting that the "interest in avoiding the unfair imposition of jury duty on citizens of an unrelated forum" weighed heavily against the Southern District of New York). To the extent that this case remains in court, a Florida court should resolve this Florida dispute.

Further, should the case remain in court, the parties will likely reach a trial (if necessary) quicker in the Southern District of Florida, which has a significantly less congested civil docket. For example, according to the Federal Judicial Caseload Statistics, in 2009 the Southern District had 23,407 pending civil cases, compared to 4,579 in the Southern District of Florida. (Lynch Decl. ¶ 3, Ex. A). The average time a civil action in the Southern District of Florida takes to reach trial is 13.5 months less than in the Southern District of New York. (Id.) These factors also weigh in favor of transfer. See e.g., Indian Harbor Ins. Co., 419 F. Supp. 2d at 407 ("docket conditions or calendar congestion of both the transferee and transferor districts is a proper factor and is accorded some weight").

Finally, "[b]ecause of the relatively short period of time the instant action has been on this court's docket and the lack of any formal development of the record, a transfer will not significantly disrupt the litigation or result in a waste of judicial resources." Zokaites v. Land-Cellular Corp., 424 F. Supp. 2d 824, 841 (W.D. Pa. 2006). Accordingly, the Court should transfer this case to the Southern District of Florida.

## IV.    <u>CONCLUSION</u>

Because this case involves a Florida plaintiff asserting a claim arising out of his Florida

employment, involving Florida witnesses and documents, Defendants respectfully request that

the Court grant their motion to transfer venue to the Southern District of Florida.

Dated:  June 29, 2010

<div style="margin-left: 40%;">

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By:   s/Sean P. Lynch
  Thomas A. Linthorst
  Sean P. Lynch
  502 Carnegie Center
  Princeton, New Jersey 08540
  (609) 919-6642

Attorneys for Defendants
E*TRADE Financial Corporation and E*TRADE
Brokerage Services, Inc.

</div>