**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| HECTOR PALACIO, RICARDO ROCHA, MARTIN DIXON and ALLEN CUMMINGS, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>   -against-<br><br>E*TRADE FINANCIAL CORPORATION and E*TRADE BROKERAGE SERVICES, INC.,<br><br>        Defendants. | CASE NO.  10-CV-4030 (RJH)<br><br>*Document Electronically Filed* |

**DEFENDANTS E\*TRADE FINANCIAL CORPORATION**
**AND E\*TRADE BROKERAGE SERVICES, INC.'S**
**MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO**
**<u>COMPEL ARBITRATION AND TRANSFER OR STAY THIS ACTION</u>**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................. 1

II.    FACTUAL BACKGROUND ................................................................................ 2

    A.    Hector Palacio's Employment ........................................................... 2

    B.    Martin Dixon's Employment .............................................................. 3

    C.    Allen Cummings' Employment .......................................................... 4

    D.    Ricardo Rocha's Employment ........................................................... 4

III.    ARGUMENT ....................................................................................................... 5

    A.    The Court Should Compel Arbitration And Transfer This Action To The District Embracing The Arbitral Forum. ................................................. 5

        1.    The Parties Agreed to Arbitrate Plaintiffs' Claims. ................................. 6

        2.    Plaintiffs Have Failed, Neglected, or Refused to Arbitrate ...................... 7

        3.    The Court Should Compel Each Plaintiff's Individual Claim To Arbitration. ................................................................................. 8

        4.    Transfer to the Northern District of California In Aid of Arbitration May Be Necessary to Compel Arbitration of Plaintiffs' Claims. ............. 9

    B.    Alternatively, Each Plaintiff Should Be Compelled to Litigate In His Respective Judicial District .................................................................. 11

    C.    Alternatively, The Case Should Be Transferred to the Southern District of Florida Pursuant to 28 U.S.C. § 1404(a). ............................................. 12

        1.    The Southern District Of Florida Is A Proper Forum ............................. 13

        2.    Plaintiffs' Choice of Forum Is Not Entitled To Deference ..................... 14

        3.    The Convenience Factors Weigh In Favor Of Transfer .......................... 14

        4.    The Locus Of Operative Facts Weighs In Favor Of Transfer. ................ 19

        5.    The Interests Of Justice And Trial Efficiency Support Transfer. ............ 21

IV.    CONCLUSION ................................................................................................. 22

# TABLE OF AUTHORITIES

**Page**

Adkins v. Labor Ready, Inc.,
303 F.3d 496 (4th Cir. 2002) ........................................................................................7

Albert Fadem Trust v. Duke Energy Corp.,
214 F. Supp. 2d 341 (S.D.N.Y. 2002).........................................................................12

America International Specialty Lines Insurance Co., Inc. v.
A.T. Massey Coal Co, Inc.,
628 F. Supp. 2d 674 (E.D.Va. 2009) ...........................................................................10

Amick v. America Exp. Travel Related Services Co., Inc.,
No. 09-civ-9780, 2010 WL 307579 (S.D.N.Y. Jan. 26, 2010).....................................20

AT&T Techs. Inc. v. Commcn's Workers of America,
475 U.S. 643 (1986).......................................................................................................9

Bao v. Gruntal & Co.,
942 F. Supp. 978 (D.N.J. 1996) ...................................................................................10

Berman v. Informix Corp.,
30 F. Supp. 2d 653 (S.D.N.Y. 1998)............................................................................15

Bynum v. National R.R. Passenger Corp.,
No. 93-civ-06180, 1994 WL 62848 (S.D.N.Y. Feb. 22, 1994) .....................................3

Cal. Innovations, Inc. v. Travelers Club Luggage, Inc.,
No. 06-06482, 2006 WL 2864016 (W.D.N.Y. Oct. 4, 2006) ..................................15, 19

Caribbean Wholesales and Serv. Corp. v. U.S. JVC Corp.,
24 F. App'x 16 (2d Cir. 2001) .....................................................................................13

Ciago v. Ameriquest Mort. Co.,
295 F. Supp. 2d 324 (S.D.N.Y. 2003)............................................................................6

City of Pontiac General Employees' Retirement System v. Stryker Corp.,
No. 10-civ-376, 2010 WL 2035130 (S.D.N.Y. May 21, 2010).....................................13

Clesi v. Zinc Corp. of America,
No. 00-civ-6786, 2001 WL 1223456 (S.D.N.Y. Mar. 6, 2001).....................................16

Commercial Solvents Corp. v. Liberty Mutual Insurance Co.,
371 F. Supp. 247 (S.D.N.Y. 1974)...............................................................................18

# TABLE OF AUTHORITIES
(continued)

**Page**

D.H. Blair & Co., Inc. v. Gottdiener,
462 F.3d 95 (2d Cir. 2006)..........................................................................................12

Dean Witter Reynolds, Inc. v. Byrd,
470 U.S. 213 (1985)..................................................................................................5, 6

Deshoulieres, S.A. v. Cuthbertson Imports, Inc.,
No. 06-civ-5163, 2006 WL 2849818 (S.D.N.Y. Oct. 3, 2006)....................................17

Downing v. Globe Direct LLC,
No. 09-civ-0693, 2010 WL 2560054 (D. Del. June 18, 2010) ....................................14

Dupuy-Buschinq General Agency, Inc. v. Ambassador Insurance Co.,
524 F.2d 1275 (5th Cir. 1978) ......................................................................................9

First Options of Chicago, Inc. v. Kaplan,
514 U.S. 938 (1995)......................................................................................................9

Freeman v. National Broad. Co.,
80 F.3d 78 (2d Cir. 1996) ...........................................................................................15

GE Capital Franchise Corp. v. Cosentino,
No. 08-civ-202S, 2009 WL 1812821 (W.D.N.Y. 2009)...............................................17

Genesco, Inc. v. T. Kakiuchi & Co.,
815 F.2d 840 (2d Cir. 1987).....................................................................................5, 10

Hawkins v. Toussaint Capital Partners, LLC,
No. 08-6866, 2010 WL 2158332 (S.D.N.Y. May 27, 2010) ..........................................3

Hoffman v. Blaski,
363 U.S. 335 (1960)....................................................................................................13

Indian Harbor Insurance Co. v. Factory Mutual Insurance Co.,
419 F. Supp. 2d 395 (S.D.N.Y. 2005)...............................................................13, 15, 21

Jackson v. Rent-A-Center, West, Inc.,
130 S. Ct. 2772 (2010)..................................................................................................9

Jones v. Weibrecht,
901 F.2d 17 (2d Cir. 1990)...........................................................................................11

# TABLE OF AUTHORITIES
(continued)

**Page**

M/S Bremen v. Zapata Off-Shore Co.,
407 U.S. 1 (1972)..................................................................................................................13

Manao Investments v. Stouts Brunswick Associates Ltd. Partnership,
No. 96-civ-7100, 1997 WL 53200 (S.D.N.Y. Feb. 10, 1992) ......................................19

Mastercard International Inc. v. Lexcel Solutions, Inc.,
No. 03-civ-7157, 2004 WL 1368299 (S.D.N.Y. June 16, 2004)..................................12

Mike v. Safeco Insurance Co. of America,
274 F. Supp. 2d 216 (D. Conn. 2003)..........................................................................15

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,
473 U.S. 614 (1985)......................................................................................................5

Moses H. Cone Mem'l Hospital v. Mercury Construction Corp.,
460 U.S. 1 (1983)..........................................................................................................5

Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.,
85 F. Supp. 2d 282 (S.D.N.Y. 2000)............................................................................21

Oldroyd v. Elmira Sav. Bank, FSB,
134 F.3d 72 (2d Cir. 1998)............................................................................................5

Optopics Laboratories Corp. v. Nicholas,
947 F. Supp. 817 (D.N.J. 1996) ..................................................................................10

Phillips v. Audio Active Ltd.,
494 F.3d 378 (2d Cir. 2007)........................................................................................11

Pomposi v. Gamestop, Inc.,
No. 09-civ-340, 2010 WL 147196 (D. Conn. Jan. 11, 2010) .......................................7

Ragone v. Atlantic Video,
595 F.3d 115 (2d Cir. 2010).........................................................................................7

Ravenswood Investment Co. v. Bishop Capital Corp.,
No. 04-civ-9266, 2005 WL 236440 (S.D.N.Y. Feb. 1, 2005) .....................................19

Reid v. Supershuttle International, Inc.,
No. 08-civ-4854, 2010 WL 1049613 (E.D.N.Y. Mar. 22, 2010) ..................................7

# TABLE OF AUTHORITIES
### (continued)

**Page**

Rubin v. Sona International Corp.,
457 F. Supp. 2d 191 (S.D.N.Y. 2006)................................................................................7

In re Saltire Industrial, Inc.,
No. 07-civ-3622, 2007 WL 1815450 (S.D.N.Y. June 22, 2007)..................................12

Saminsky v. Occidental Petro. Corp.,
373 F. Supp. 257 (S.D.N.Y. 1974)................................................................................19

Sea Spray Holdings, Ltd. v. Pali Finance Group, Inc.,
269 F. Supp. 2d 356 (S.D.N.Y. 2003)............................................................................9

Shaw Group, Inc. v. Triplefine International Corp.,
322 F.3d 115 (2d Cir. 2003)...........................................................................................6

Southland Corp. v. Keating,
465 U.S. 1 (1983)............................................................................................................5

Steele v. L.F. Rothchild & Co.,
701 F. Supp. 407 (S.D.N.Y. 1998).................................................................................7

In re Stillwater Mining Co. Sec. Litigation,
No. 02-civ-2806, 2003 WL 21087953 (S.D.N.Y. May 12, 2003)..............................519

Stolt-Nielsen S.A. v. AnimalFeeds International Corp.,
130 S. Ct. 1758 (2010)................................................................................................8, 9

Topolnycky v. Ukrainian Savings & Loan Association,
No. 90-878, 1991 WL 117397 (W.D.N.Y. June 12, 1991)..........................................18

Unique Indus., Inc. v. Lisa Frank, Inc.,
No. 93-c 1994 WL 525041 (S.D.N.Y. Sept. 23, 1994).........................................13, 14

Van Dusen v. Barrack,
376 U.S. 612 (1964)......................................................................................................12

Viacom International, Inc. v. Melvin Simon Products, Inc.,
774 F. Supp. 858 (S.D.N.Y. 1991)...............................................................................13

Yakin v. Tyler Hill Corp.,
566 F.3d 72 (2d Cir. 2009)...........................................................................................11

## TABLE OF AUTHORITIES
(continued)

**Page**

Yang v. Odom,
409 F. Supp. 2d 599 (D.N.J. 2006) .......................................................................................14

ZPC 2000, Inc. v. SCA Group, Inc.,
86 F. Supp. 2d 274 (S.D.N.Y. 2000) ....................................................................................19

Zokaites v. Land-Cellular Corp.,
424 F. Supp. 2d 824 (W.D. Pa. 2006) ..................................................................................22

## STATUTES

9 U.S.C. § 2 ...............................................................................................................................5

9 U.S.C. § 4  ..........................................................................................................................6, 9

28 U.S.C. § 1391(b) ................................................................................................................14

28 U.S.C. § 1404(a) ................................................................................................................12

29 U.S.C. § 216(b) ..................................................................................................................17

## RULES

Fed. R. Civ. P. 45(b)(2), (c)(3) & (e) ......................................................................................4

Defendants E*TRADE Financial Corporation ("ETFC") and E*TRADE Brokerage Services, Inc. ("E*TRADE") submit this memorandum in support of their application to compel arbitration and transfer or stay this action.

## I.      INTRODUCTION

Plaintiff Hector Palacio, a former Branch Relationship Manager in E*TRADE's Fort Lauderdale branch, initiated this case by asserting a single cause of action for overtime under the Fair Labor Standards Act ("FLSA").  Palacio's claim for overtime relates solely to his work for E*TRADE in its Fort Lauderdale, Florida branch.  Palacio never worked for E*TRADE in New York.  Palacio has retained Florida counsel.  Further, Palacio is party to an arbitration agreement that requires him to arbitrate his claim for overtime.  Rather than file his claim in arbitration, or even in the Southern District of Florida, which Court is less than a mile from the Fort Lauderdale branch where Palacio worked, he and his counsel filed this case over 1,000 miles away in the Southern District of New York.  The only plausible explanation for why Palacio and his counsel would put themselves to such inconvenience is that they are engaging in forum shopping.

Since the filing of this action, five other Plaintiffs and Opt-Ins have joined this case – two more from Florida, two from Georgia, and one from Texas.  All of the other Plaintiffs and Opt-Ins are parties to their own arbitration agreements requiring that they arbitrate the claims asserted in this case.  Plaintiffs' strategic decision to file and continue this action in Court in breach of their agreements to arbitrate, and in a district so far from where they live and worked, has made it necessary to resolve which forum and jurisdiction will hear this case before proceeding to the merits.

Defendants respectfully request that the Court enforce the arbitration agreements executed by each Plaintiff and either transfer this case to the judicial district embracing the

location of the arbitrations or, alternatively, stay this case to permit Defendants to file an application to compel arbitrations in that forum.

Alternatively, in the unlikely event that the Court should determine that any of the arbitration agreements are invalid or unenforceable for any reason, Defendants respectfully request that the Court enforce the contractual forum selection clause and transfer each such Plaintiff to the district where he worked for the applicable E*TRADE entity.  Finally, in the further unlikely event that the Court should decline to enforce the contractual forum selection clauses, Defendants respectfully request that the Court transfer this case to the Southern District of Florida, which is the most convenient jurisdiction for this case given the location of the witnesses and documents that will be central to Plaintiffs' claims for overtime.

## II.   FACTUAL BACKGROUND

### A.   Hector Palacio's Employment

E*TRADE employed Palacio as a Branch Relationship Manager in its Fort Lauderdale branch from October 2007 to November 2008.  (Declaration of Robert Russini ("Russini Decl.") ¶ 2) (Docket No. 14).  Palacio alleges that during his employment in Fort Lauderdale, he should have been paid overtime compensation under the FLSA.  (Amended Compl. ¶ 1).  At the inception of his employment, Palacio signed an agreement that provides:

> **In the event of any dispute or claim arising out of or relating to your employment relationship with the Company, this agreement, or the termination of your employment with the Company for any reason (including, but not limited to, any claims of breach of contract, wrongful termination or age, sex, race, national origin, disability, religious or other discrimination, harassment or retaliation) (collectively referred to hereafter as "Disputes"), you and the Company agree that all such Disputes shall be fully, finally and exclusively resolved by binding arbitration to the fullest extent permitted by law.  The arbitration will be conducted by the American Arbitration Association [in San Mateo California] or such other location that may be agreed to by you and the Company in writing. You and the Company hereby waive your respective rights to have any Disputes tried to a judge or jury.  You and the Company further agree that if, and only if, this arbitration agreement shall, for any reason, be held invalid or unenforceable,**

2

> **then any Dispute between us shall be resolved by means of a court trial (involving a judge but no jury) conducted by the state or federal court for the county in which the Company office in which you most often work is located. . . . You understand and agree that you and the Company are hereby irrevocably waiving any and all rights to have any Dispute tried by a jury.**

(Stevenson Decl. ¶ 3, Ex. A).

As a licensed professional, Palacio was registered with the National Association of Securities Dealers ("NASD") in connection with his work at E*TRADE. Therefore, upon his hire, Palacio also executed a Form U-4, the Uniform Application for Securities Industry Registration or Transfer, which stated:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the SROs indicated in Section 4 (SRO REGISTRATION) as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction.

(Declaration of Dafne Donalds ("Donalds Decl."), Ex. A).[1]

### B.    Martin Dixon's Employment

Plaintiff Dixon was employed by E*TRADE Securities LLC from August 2006 to June 2008. (Second Declaration of Christina Wu ("Second Wu Decl.") ¶ 3). Dixon only worked in a position that was classified as exempt from overtime from March 24, 2007 to September 27, 2007. (Second Wu Decl. ¶ 3). During that period, Dixon worked exclusively in Tampa and reported to Constantine Damaskos, who reported to Scott Bever (both of whom were based in Tampa). (Bever Decl. ¶ 3). Dixon agreed to the same arbitration, forum selection and jury

---

[1]  On July 30, 2007, the Financial Industry Regulatory Authority ("FINRA") was created through the consolidation of the NASD and the member regulations, enforcement, and arbitration operations of the New York Stock Exchange. FINRA Rule 13200 provides for the arbitration of employment claims, including claims for overtime. See Hawkins v. Toussaint Capital Partners, LLC, No. 08-6866, 2010 WL 2158332, at *5 (S.D.N.Y. May 27, 2010) (compelling FINRA arbitration of employee's wage claims under FINRA Rule 13200).

waiver provisions as Palacio.  (Stevenson Decl. ¶ 5, Ex. C).  Dixon also executed the Form U-4 and was registered with the NASD in connection with his employment at E*TRADE Securities LLC.  (Donalds Decl. ¶ 5, Ex. C).  Dixon continues to reside in Tampa.  (Docket No. 2).

### C.     Allen Cummings' Employment

Plaintiff Cummings was employed by E*TRADE Securities LLC as an Executive Services Relationship Manager in Alpharetta, Georgia from March 2007 until April 2008.  (Second Wu Decl. ¶ 4).  Cummings reported to manager Duane Carthy, who also worked in Alpharetta.  (Declaration of Duane Carthy ("Carthy Decl.") ¶ 2).  Cummings agreed to the same arbitration, forum selection and jury waiver provisions as did Palacio.  (Stevenson Decl. ¶ 7, Ex. E).  Cummings also executed the Form U-4 and was registered in connection with his employment at E*TRADE Securities LLC.  (Donalds Decl. ¶ 6, Ex. D). Cummings continues to reside in Georgia.  (Docket No. 26).

### D.     Ricardo Rocha's Employment

Rocha worked as a Branch Relationship Manager in Houston, Texas from April 16, 2007 until January 3, 2008.  (Second Wu Decl. ¶ 5).  Rocha agreed to the same arbitration, forum selection and jury waiver provisions as did Palacio.  (Stevenson Decl. ¶ 6, Ex. D.  Rocha also executed the Form U-4 and was registered in connection with his employment at E*TRADE.  (Donalds Decl. ¶ 4, Ex. B).  Rocha continues to reside in Houston.  (Docket No. 7).[2]

---

[2]    In addition to the named Plaintiffs, two individuals (Andrew Gilbert and Sharon Ford) have filed Consents to Sue in this case, one from Tampa and one from Georgia.  (Docket Nos. 28 and 33).  Defendants dispute that those individuals can properly join this case for a variety of reasons, and no determination has been made that they may do so.  In any event, both of those individuals are subject to arbitration agreements as well, and both agreed to the Form U-4.  (Stevenson Decl. ¶¶ 8, 9, Exs. F, G; Donalds Decl. ¶¶ 7, 8, Exs. E, F).

III.   **ARGUMENT**

   A.   **The Court Should Compel Arbitration And Transfer This Action To The District Embracing The Arbitral Forum.**

The FAA provides, in relevant part, that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy … *shall be valid, irrevocable and enforceable*." 9 U.S.C. § 2 (emphasis added). Thus, "[c]ontracts to arbitrate are not to be avoided by allowing one party to ignore the contract and resort to the courts. Such a course could lead to prolonged litigation, one of the very risks the parties, by contracting for arbitration, sought to eliminate." Southland Corp. v. Keating, 465 U.S. 1, 7 (1983); see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985) (the FAA, and the strong federal policy favoring arbitration that it embodies, requires courts to "rigorously enforce agreements to arbitrate"); Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985) (the FAA "mandates that district courts shall direct the parties to proceed to arbitration on issues" covered by an arbitration agreement). Courts should, therefore, construe arbitration clauses as broadly as possible and "any doubts concerning the scope of arbitration should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983). The exacting application and broad construction of arbitration agreements dictate that, if the allegations underlying the claims "touch matters" covered by the parties' arbitration agreement, then those claims must be arbitrated, whatever the legal labels attached to them. Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 846 (2d Cir. 1987). A broad arbitration clause – such as that in the agreements at issue here – creates a presumption of arbitrability, which is only overcome "if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that it covers the asserted dispute." Oldroyd v. Elmira Sav. Bank, FSB, 134 F.3d 72, 76 (2d Cir. 1998).

When a litigant refuses to arbitrate a dispute within the scope of a valid arbitration agreement, a judicial order compelling arbitration is mandatory – not discretionary.  See 9 U.S.C. § 4; see also Dean Witter, 470 U.S. at 217 (the FAA leaves no room for the exercise of discretion and mandates that district courts direct the parties to proceed to arbitration on issues within the scope of an arbitration agreement).  On a motion to compel arbitration, the court must consider two threshold questions:  (1) whether a valid agreement or obligation to arbitrate exists; and (2) whether one party to the agreement has failed, neglected, or refused to arbitrate.  Shaw Group, Inc. v. Triplefine Int'l Corp., 322 F.3d 115, 120 (2d Cir. 2003).  Here, there are valid agreements to arbitrate and Plaintiffs have refused to arbitrate.

### 1.    The Parties Agreed to Arbitrate Plaintiffs' Claims.

Each Plaintiff has executed an agreement to arbitrate the following claims:

> **In the event of *any dispute or claim arising out of or relating to your employment relationship with the Company*, this agreement, or the termination of your employment with the Company for any reason (including, but not limited to, any claims of breach of contract, wrongful termination or age, sex, race, national origin, disability, religious or other discrimination, harassment or retaliation) (collectively referred to hereafter as "Disputes"), you and the Company agree that *all such Disputes shall be fully, finally and exclusively resolved by binding arbitration to the fullest extent permitted by law*.**

(Stevenson Decl. ¶¶ 3, 5, 6, 7, Exs. A, C, D and E) (emphasis added).

Each Plaintiff's claim for overtime compensation under the FLSA arises from and relates to each Plaintiff's employment at the applicable E*TRADE entity.  Consequently, each of their claims falls squarely within the coverage of their binding arbitration agreements.  Hence, the first factor – whether the parties agreed to arbitrate the disputes – is satisfied.

Moreover, Courts within the Second Circuit routinely require plaintiffs to arbitrate statutory wage and hour claims.  For instance, in Ciago v. Ameriquest Mort. Co., 295 F. Supp. 2d 324, 332 (S.D.N.Y. 2003), this Court compelled an FLSA claim to arbitration, concluding

that Congress had not evinced any intention to preclude arbitration of FLSA claims and that claims under the FLSA may be subject to compulsory arbitration provisions.  Id. (citing Adkins v. Labor Ready, Inc., 303 F.3d 496, 506 (4th Cir. 2002)); see also, Arrigo v. Blue Fish Commodities Inc., -- F. Supp. 2d. --, 2010 WL 391813, at * 4-5 (S.D.N.Y. Feb. 4, 2010) (dismissing FLSA action and ordering the parties to arbitration); Steele v. L.F. Rothchild & Co., 701 F. Supp. 407, 408 (S.D.N.Y. 1998) (FLSA claims are not exempt from the arbitration requirements of the FAA); Reid v. Supershuttle Int'l, Inc., No. 08-civ-4854, 2010 WL 1049613 (E.D.N.Y. Mar. 22, 2010) (compelling arbitration of FLSA claims); Pomposi v. Gamestop, Inc., No. 09-civ-340, 2010 WL 147196 (D. Conn. Jan. 11, 2010) (dismissing FLSA action and ordering the parties to arbitration).  Thus, valid, binding arbitration agreements exist that cover each of the Plaintiff's claims.[3]

### 2.    Plaintiffs Have Failed, Neglected, or Refused to Arbitrate.

This lawsuit is proof positive that Plaintiffs have "failed, neglected, or refused" to arbitrate in accordance with their agreements.  Ignoring entirely their commitment to pursue arbitration, Plaintiffs instead have filed and continued this lawsuit.  See Ragone v. Atlantic Video, 595 F.3d 115 (2d Cir. 2010) (affirming dismissal and ordering arbitration where the plaintiff raised employment claims under state and federal law that were subject to an arbitration agreement); Rubin v. Sona Int'l Corp., 457 F. Supp. 2d 191, 198 (S.D.N.Y. 2006).  Thus, both prerequisites for an order compelling arbitration are met.

---

[3]   As noted, each Plaintiff entered into two arbitration agreements covering their claims in this case, their employment agreements and FINRA Form U-4 agreements.  Defendants request that, should arbitration of their claims not be compelled under their employment agreements for any reason, Plaintiffs claims should be compelled to FINRA arbitration in accordance with their Form U-4 agreements.

**3.** **The Court Should Compel Each Plaintiff's Individual Claim To Arbitration.**

As noted, each Plaintiff has agreed to arbitrate his individual claims "relating to [his] employment relationship with the Company . . . ."  (Stevenson Decl. ¶¶ 3, 5, 6, 7, Exs. A, C, D and E).  The focus of the agreement is on claims relating to the individual employee's employment with the Company.  Therefore, each Plaintiff's individual claim for overtime based on his employment with the Company should be compelled to arbitration.

Plaintiffs have pled this case as a putative collective action under the FLSA, but no determination has been made that this case may proceed as a collective action and Defendants adamantly believe that this case may not be maintained as a collective action.  In any event, because the parties' arbitration agreement does not include an agreement to proceed in arbitration as a collective action, Defendants respectfully request that each Plaintiff be compelled to arbitration with respect to his individual claim for overtime.

The United States Supreme Court recently held that arbitration can only be compelled based on a party's express agreement, and that a court may not infer a party's agreement to arbitrate on a class basis where the arbitration agreement is silent with respect to class arbitration.  Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 130 S.Ct. 1758, 1775 (2010) (agreement to arbitrate does not imply an agreement to arbitrate on a class basis because "class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their dispute to an arbitrator").  The arbitration agreements between E*TRADE and Plaintiffs do not include an agreement to permit an arbitration to proceed on a class or collective action basis, with notice and an invitation to join the action issued to all putative class members.  Any decision that would permit Plaintiffs to send notice to hundreds of other individuals inviting them to join the arbitration and proceed

collectively in one arbitration would so fundamentally change the arbitration of each Plaintiff's individual claim to such a degree that it cannot be presumed that E*TRADE consented to those procedures in arbitration simply by agreeing to submit its dispute with each Plaintiff to an arbitrator.

Moreover, the question of whether the arbitration agreement in this case includes an express agreement by E*TRADE to permit an arbitration to proceed as a collective action is for the Court to decide, not the arbitrator.  See Stolt-Nielsen, 130 S.Ct. at 1775; Jackson v. Rent-A-Center, West, Inc., 130 S.Ct. 2772, 1779-80 (2010) (questions of arbitrability, including questions regarding the existence of a legally binding and valid arbitration agreement, as well as questions regarding the scope of the arbitration agreement, are matters for the court to decide); AT&T Techs. Inc. v. Commcn's Workers of Am., 475 U.S. 643, 649 (1986) (whether or not the company was bound to arbitrate, as well as what issues it must arbitrate, are matters to be determined by the Court on the basis of the contract entered into by the parties); First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938 (1995) (absent express delegation of authority to the arbitrator in the parties' agreement, the court decides issues of arbitrability).  Accordingly, the Court should compel each Plaintiff to proceed in arbitration with respect to his individual claim for overtime.

### 4.    Transfer to the Northern District of California In Aid of Arbitration May Be Necessary to Compel Arbitration of Plaintiffs' Claims.

Under the FAA, an arbitration must be held "within the district in which the petition for an order directing such arbitration is filed."  9 U.S.C. § 4.   Sea Spray Holdings, Ltd. v. Pali Fin. Group, Inc., 269 F. Supp. 2d 356, 363 (S.D.N.Y. 2003) (where the parties agreed to arbitrate in a particular forum, only a district court embracing that forum has the authority to compel arbitration); but see Dupuy-Buschinq Gen. Agency, Inc. v. Ambassador Ins. Co., 524 F.2d 1275,

1276, 1278 (5th Cir. 1978) (recognizing a Mississippi district court's order directing parties to proceed with arbitration in New Jersey where the plaintiff sought to avoid arbitration by bringing suit in Mississippi rather than in the contract forum).  Because Plaintiffs filed this case in a jurisdiction other than the forum in which they agreed to arbitrate, a transfer to that forum may be necessary to effect arbitration.  See Am. Int'l Specialty Lines Ins. Co., Inc. v. A.T. Massey Coal Co, , Inc., 628 F. Supp. 2d 674 (E.D.Va. 2009) (transferring action *sua sponte*, "in the interests of justice," to the venue set forth in the parties' arbitration agreement); Optopics Labs. Corp. v. Nicholas, 947 F. Supp. 817, 824-25 (D.N.J. 1996) (transferring venue to a district authorized to compel arbitration, as opposed to staying action, to conserve judicial resources and avoid multiplicitous litigation); Bao v. Gruntal & Co., 942 F. Supp. 978, 983 (D.N.J. 1996) (granting transfer to district authorized to compel arbitration).

Each Plaintiff's arbitration agreement provides for arbitration in San Mateo, California, or "such other location that may be agreed to by you and the Company in writing."  (Stevenson Decl. ¶¶ 3, 5, 6, 7, Exs. A, C, D, and E).  Defendants have offered to arbitrate the claims of the Plaintiffs either in (1) the county where each Plaintiff worked for the applicable E*TRADE entity, or (2) the Southern District of Florida.  Plaintiffs have declined the offer and, therefore, the arbitrations will occur in San Mateo, California, and the Court should transfer this action to the Northern District of California.

Alternatively, the Court may stay this action pending arbitration pursuant to Section 3 of the FAA.  See, e.g., Genesco, 815 F.2d 846 (2d Cir. 1987) (staying action pending arbitration under parties' agreement).[4]

---

[4]   As noted, there are two Opt-Ins who have filed consents to join this case, but no determination has been made whether they may do so.  Both Opt-Ins (Andrew Gilbert and Sharon Ford) are parties to arbitration agreements.  (Stevenson Decl. ¶¶ 8, 9, Ex. F, G;

**B.      Alternatively, Each Plaintiff Should Be Compelled to Litigate In His
            Respective Judicial District.**

As noted, each Plaintiff's employment agreement provides that "if, and only if, this arbitration agreement shall, for any reason, be held invalid or unenforceable, then any Dispute between us shall be resolved by means of a court trial (involving a judge but no jury) conducted by the state or federal court for the county in which the Company office in which you most often work is located."  (Stevenson Decl. ¶¶ 3, 5, 6, 7, Exs. A, C, D, and E).  Although each arbitration agreement plainly is enforceable, if, for any reason, the Court finds any of those agreements to be invalid or unenforceable, it should enforce the forum selection clause in the applicable agreement and transfer such Plaintiff to his home district.  See M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972) (forum selection clause is "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances"); Yakin v. Tyler Hill Corp., 566 F.3d 72, 76 (2d Cir. 2009); Phillips v. Audio Active Ltd., 494 F.3d 378 (2d Cir. 2007) (party resisting a forum selection clause can only rebut the presumption of enforceability by making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching).

Enforcing the forum selection clause to require Plaintiffs to litigate in the districts where they currently reside, and previously worked for the applicable E*TRADE entity, plainly would not be "unreasonable and unjust."  Jones v. Weibrecht, 901 F.2d 17, 18 (2d Cir. 1990).  Hence, if any of their agreements to arbitrate are held invalid or unenforceable, such Plaintiff's claims should be severed and transferred to the judicial districts where he or they worked for the

---

Donalds Decl. ¶¶ 7, 8, Exs. E, F).  Defendants respectfully request that those individuals either be dismissed as improperly joined, or have their claims compelled to arbitration for the same reasons as the named Plaintiffs.

applicable E*TRADE entity.[5]

**C.    Alternatively, The Case Should Be Transferred to the Southern District of Florida Pursuant to 28 U.S.C. § 1404(a).**

In the unlikely event that the Court should decline to enforce either the arbitration agreement or the forum selection agreement, Defendants respectfully request that the Court transfer this action to the United States District Court for the Southern District of Florida, pursuant to 28 U.S.C. § 1404(a).  Section 1404(a) vests a district court with broad authority to transfer an action to a more appropriate district for the convenience of parties and witnesses and in the interest of justice, provided that the action "might have been brought" in the transferee district.  28 U.S.C. § 1404(a); D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 106 (2d Cir. 2006).  The primary goal of § 1404(a) is to "protect litigants, witnesses and the public against unnecessary inconvenience and expense."  Mastercard Int'l Inc. v. Lexcel Solutions, Inc., No. 03-civ-7157, 2004 WL 1368299, at *5 (S.D.N.Y. June 16, 2004) (quoting Van Dusen v. Barrack, 376 U.S. 612, 616 (1964)).

In applying Section 1404(a)'s flexible rule governing transfer, courts within the Second Circuit focus on a variety of relevant factors, including:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, (7) the relative means of the parties, (8) the forum's familiarity with governing law, and (9) trial efficiency and the interest of justice, based on the totality of the circumstances

See D.H. Blair & Co, 462 F.3d at 106-7 (2d Cir. 2006); Albert Fadem Trust v. Duke Energy Corp., 214 F. Supp. 2d 341, 343 (S.D.N.Y. 2002); see also In re Saltire Indus., Inc., No. 07-civ-3622, 2007 WL 1815450 (S.D.N.Y. June 22, 2007) (transferring action to Tennessee because

---

[5]    For Palacio, that would be the Southern District of Florida; for Dixon, the Middle District of Florida; for Rocha, the Southern District of Texas; and for Cummings, the Northern District of Georgia.  The Court should then dismiss the claims of the two Opt-Ins.

this District was inconvenient to the real parties in interest and the witnesses, while the Middle District of Tennessee was convenient to all involved except the Liquidating Trustee).

Two other significant factors that figure centrally in transfer motions are the existence of a forum-selection clause and discouragement of forum shopping by the plaintiff.  Caribbean Wholesales and Serv. Corp. v. U.S. JVC Corp., 24 F. App'x 16, 18 (2d Cir. 2001) (a forum selection clause is a significant factor that "figures centrally" in a district court's determination of whether to transfer a case) (citing M/S Bremen, 407 U.S. at 12); Unique Indus., Inc. v. Lisa Frank, Inc., No. 93-civ-08037, 1994 WL 525041, at *2 (S.D.N.Y. Sept. 23, 1994) (discouragement of forum shopping is an important interest to be considered).  There is no rigid formula for balancing these factors and no single one of them is determinative, but the core determination under § 1404(a) is the center of gravity of the litigation, a key test of which is the convenience of witnesses.  Indian Harbor Ins. Co. v. Factory Mut. Ins. Co., 419 F. Supp. 2d 395, 402 (S.D.N.Y. 2005); Viacom Int'l, Inc. v. Melvin Simon Prods., Inc., 774 F. Supp. 858, 868 (S.D.N.Y. 1991) (courts "routinely transfer cases when the principal events occurred, and the principal witnesses are located, in another district").

### 1.    The Southern District Of Florida Is A Proper Forum.

Because Section 1404(a) permits a district court to transfer a civil action "to any other district or division where it might have been brought," the threshold inquiry is whether Plaintiffs could have brought this case in the Southern District of Florida.  28 U.S.C. § 1404(a); Hoffman v. Blaski, 363 U.S. 335, 336 (1960); City of Pontiac Gen. Employees' Retirement Sys. v. Stryker Corp., No. 10-civ-376, 2010 WL 2035130, at *3 (S.D.N.Y. May 21, 2010).  E*TRADE operates a branch in Fort Lauderdale and Palacio is claiming overtime for the work he performed in Fort Lauderdale, which lies within the Southern District of Florida.  (Russini Decl. ¶ 1).  E*TRADE and Palacio are subject to personal jurisdiction in the Southern District of Florida relating to this

case, and a substantial part of the events underlying Palacio's claims occurred in Florida.  Thus, Plaintiffs could have brought this case in the Southern District of Florida.  28 U.S.C. § 1391(b) (venue is proper where the defendant resides (i.e., is subject to personal jurisdiction) or where a substantial part of the events underlying the cause of action arose).

### 2. Plaintiffs' Choice of Forum Is Not Entitled To Deference.

Typically, a plaintiff's choice of forum in non-class or collective actions is given some deference when challenged through a motion to transfer because it is presumed that the plaintiff's place of residence is a more convenient place for the plaintiff to litigate the action. Here, however, Plaintiffs' forum choice is entitled to no deference because (i) Plaintiffs live hundreds of miles from New York; (ii) the operative facts for their claims are not centered in, or nearby, New York; and (ii) they seek to bring suit this as a putative FLSA collective action.  See Yang v. Odom, 409 F. Supp. 2d 599, 606 (D.N.J. 2006) (affording less deference to plaintiff's choice of forum because it was "a class action litigation"); see also Downing v. Globe Direct LLC, No. 09-civ-0693, 2010 WL 2560054, *3 (D. Del. June 18, 2010) ("Because Plaintiff purports to bring this action on behalf of other class members, his choice of forum is entitled to less weight.").

In addition, Palacio's decision not to initially file this case in the Court located less than a mile from where he worked and close to where he resides, and instead to file in a Court over 1,000 miles away, raises the concern that he is simply forum shopping, which the Court should not reward.  See Unique Indus., Inc., 1994 WL 525041, at *2.

### 3. The Convenience Factors Weigh In Favor Of Transfer.

#### a. The Location of Key Witnesses Weighs in Favor of Transfer.

The Court should transfer venue because the witnesses necessary to support or refute Palacio's claims are principally located in the Southern District of Florida and the witnesses

necessary to support or refute the other Plaintiffs' claims are located significantly closer to the Southern District of Florida than to New York.  Convenience of the witnesses is "probably the single-most important factor in the analysis of whether transfer should be granted."  Berman v. Informix Corp., 30 F. Supp. 2d 653 (S.D.N.Y. 1998); Indian Harbor Ins. Co., 419 F. Supp. 2d at 402 ("To determine whether transfer is appropriate, the Court looks to the 'center of gravity of the litigation,' as judged primarily by the convenience of witnesses.").  Consequently, courts routinely transfer cases where the testimonial evidence necessary to the proof and defense of the operative facts underlying the plaintiff's claim is located in the transferee forum.  See, e.g., Cal. Innovations, Inc. v. Travelers Club Luggage, Inc., No. 06-06482, 2006 WL 2864016, at *6-7 (W.D.N.Y. Oct. 4, 2006) (transferring to the Central District of California, where witnesses, documents, and proof relative to plaintiff's claims were located).

Palacio claims that, during his employment in the Fort Lauderdale branch, he should have been paid overtime for any hours worked over 40 in a workweek, and that no exemption from overtime applied to him.  (Amended Compl. ¶ 15).  Whether Palacio was entitled to overtime will turn on the job duties he actually performed on a day-to-day basis, and whether those duties meet the "duties tests" for the applicable exemptions.  See, e.g., Freeman v. Nat'l Broad. Co., 80 F.3d 78, 82-83 (2d Cir. 1996) (factual findings as to the nature of the plaintiffs' employment is the heart of the exemption inquiry); Mike v. Safeco Ins. Co. of Am., 274 F. Supp. 2d 216, 220 (D. Conn. 2003) (central question is whether the balance of tasks performed on a day-to-day basis were administrative or non-administrative).  Further, if Palacio proves he was eligible for overtime under the FLSA, the issue will then be whether he worked any overtime and, if so, how much.  The likely witnesses who would testify as to these issues, including Palacio, his former

supervisor (Robert Russini), and other employees in the Fort Lauderdale branch, are located in the Southern District of Florida.  (Russini Decl. ¶ 11-12).

Having to litigate Palacio's case in New York would significantly inconvenience these witnesses, who should not be burdened with having to travel to New York to litigate this Florida dispute.  Clesi v. Zinc Corp. of Am., No. 00-civ-6786, 2001 WL 1223456, at *6 (S.D.N.Y. Mar. 6, 2001) (transferring action to the Northern District of New York, noting that inconvenience to the witnesses and the cost to the party subpoenaing them would be greater if transfer were not granted).  By contrast, the Southern District of Florida's courthouse in Fort Lauderdale is less than a mile from E*TRADE's Fort Lauderdale branch.  Because litigating this case in the Southern District of Florida would allow key witnesses to testify without requiring them to travel long distances and without causing major disruption in their lives or the lives of their families (or substantial cost to either party), this factor weighs heavily in favor of transfer.

The same holds true for the additional Plaintiffs and Opt-Ins.  None of the named Plaintiffs and none of the purported Opt-Ins ever worked for E*TRADE in New York, and all of them reside far from New York.  Plaintiff Dixon and Opt-In Gilbert live and worked in Tampa. (Bever Decl. ¶ 3-4; Second Wu Decl. ¶¶ 3, 6).  The witnesses knowledgeable about their claims – Dixon, Gilbert, their manager Scott Bever, and their co-workers – live and work in and around Tampa.  (Bever Decl. ¶ 10).  Plaintiff Cummings and Opt-In Ford live and worked in Alpharetta, Georgia.  (Carthy Decl. ¶¶ 2,3).  The witnesses knowledgeable about Cummings' and Ford's claims – Cummings, Ford, their supervisor Duane Carthy, and their co-workers – live and work in and around Alpharetta, Georgia.  (Carthy Decl. ¶¶ 10, 11).  Plaintiff Rocha lives and worked in Houston.  (Docket No. 7; Second Wu Decl. ¶ 5).  The witnesses knowledgeable about Rocha's claims – Rocha and his co-workers – live and worked in Houston.  (Bever Decl. ¶ 13).  The

16

branch managers and co-workers of Plaintiffs Dixon, Cummings, and Rocha would be inconvenienced by having to travel to New York, and live closer to the Southern District of Florida than the Southern District of New York.  See GE Capital Franchise Corp. v. Cosentino, No. 08-civ-202S, 2009 WL 1812821 (W.D.N.Y. 2009) (noting that the convenience of the witnesses and parties weighed in favor of transfer where the primary witness lived Florida – the proposed transferee forum – and the Arizona plaintiff would have to travel regardless of whether the case were venued in New York or Florida).

Critically, Palacio cannot possibly claim that litigating in the Southern District of Florida would cause him an undue hardship or inconvenience.  See, e.g., Bynum v. Nat'l R.R. Passenger Corp., No. 93-civ-06180, 1994 WL 62848, at *3 (S.D.N.Y. Feb. 22, 1994) ("Since plaintiff resides in New Jersey, he cannot claim that transferring the action to New Jersey would cause undue hardship."); see also Deshoulieres, S.A. v. Cuthbertson Imports, Inc., No. 06-civ-5163, 2006 WL 2849818, at *3 (S.D.N.Y. Oct. 3, 2006) ("the forum-selection clause contracted to by Plaintiff ... undercuts its argument that Connecticut would be an inconvenient forum in which to litigate").  Likewise, Plaintiff Dixon and Opt-In Gilbert cannot claim that traveling to New York would be more convenient than traveling from Tampa to Fort Lauderdale.  Nor can Cummings or Rocha claim that traveling to New York would be more convenient than to Florida.  All of the Plaintiffs and Opt-Ins are represented by Florida counsel.

Further, even in the unlikely event that the case was permitted to proceed as a collective action, notice would be sent to current and former E*TRADE employees who would join only if they affirmatively filed consents with the Court.  29 U.S.C. § 216(b).  E*TRADE employs relationship managers in numerous states, including in Florida, Georgia, North Carolina, Texas, Michigan, Colorado, Oregon, Minnesota, California, Washington State, Illinois, the District of

Columbia, Massachusetts, New Jersey, Arizona, Pennsylvania, and New York.  (First Declaration of Christina Wu ("Wu Decl.") ¶ 3) (Docket No. 16).  Only 3 of E*TRADE's 28 retail branches, and none of its work locations for the non-branch relationship managers, are in New York.  (Coy Decl. ¶ 9 (Docket No. 17); Second Wu Decl. ¶ 8).

### b.   The Availability of Process to Compel the Attendance of Unwilling Witnesses Weighs in Favor of Transfer.

Another factor favoring transfer is the limitation on the subpoena power of federal courts. See Fed. R. Civ. P. 45(b)(2), (c)(3) & (e) (limiting the subpoena power of federal courts to within 100 miles of the place of trial).  Unlike this Court, the Southern District of Florida would have the ability to compel most of the witnesses the parties would be likely call to testify at trial concerning Palacio's claim, including Palacio's direct supervisor and his co-workers from the Fort Lauderdale branch.  See, e.g., Commercial Solvents Corp. v. Liberty Mut. Ins. Co., 371 F. Supp. 247, 250 (S.D.N.Y. 1974) (courts generally transfer cases when important witnesses cannot be compelled to testify in the forum, but could be subpoenaed in the transferee court); Topolnycky v. Ukrainian Savings & Loan Ass'n, No. 90-878, 1991 WL 117397, at *6-7 (W.D.N.Y. June 12, 1991) (granting transfer, in part, because transferee court would be able to compel attendance of non-party witnesses).  The Southern District of Florida will have the ability to compel the appearance of more non-party witnesses than would this Court, which weighs in favor of transferring this case.

### c.   The Location of Relevant Documents and Relative Ease of Access to Sources of Proof Weighs in Favor of Transfer.

Further weighing in favor of transfer is the fact that the relevant records concerning Palacio's employment and job duties (as well as those of Plaintiff Dixon and Opt-In Gilbert) are located in Florida.  Supervisor files and other documents created by Palacio, Dixon, Gilbert and their supervisors, and communications between them regarding performance and job duties, are

maintained and accessible from the Florida locations where each worked.  (Russini Decl. ¶ 13,

Bever Decl. ¶ 12, Carthy Decl. ¶ 12).  Although courts put somewhat less emphasis these days

on the location of records due to the feasibility of transporting them, to the extent this factor is

considered, it weights in favor of transfer.  See In re Stillwater Mining Co. Sec. Litig., No. 02-

civ-2806, 2003 WL 21087953, at *5 (S.D.N.Y. May 12, 2003) (the fact that the documents are

all currently located in the transferee district favors transfer); Ravenswood Inv. Co. v. Bishop

Capital Corp., No. 04-civ-9266, 2005 WL 236440, at *6 (S.D.N.Y. Feb. 1, 2005) (superior

access to documents is a factor that weighs in favor of transfer).

### 4.        The Locus Of Operative Facts Weighs In Favor Of Transfer.

The core determination under Section 1404(a) is the "center of gravity of the litigation."

Saminsky v. Occidental Petro. Corp., 373 F. Supp. 257, 257 (S.D.N.Y. 1974); ZPC 2000, Inc. v.

SCA Group, Inc., 86 F. Supp. 2d 274, 279 (S.D.N.Y. 2000) (location of operative events is a

'primary factor' in determining a motion to transfer venue).   This case centers on the Plaintiffs'

actual job duties and hours of work in their respective work locations.  For Palacio, the Southern

District of Florida, particularly Fort Lauderdale, is the center of the litigation.  For the other

Plaintiffs, the center of the litigation is the areas where they worked, which are closer to the

Southern District of Florida than New York.

The lack of any material connection to this district is a deficiency that dictates

transferring this case.  See Manao Invs. v. Stouts Brunswick Assocs. Ltd. P'ship, No. 96-civ-

7100, 1997 WL 53200, at *2 (S.D.N.Y. Feb. 10, 1992) ("Where there is no material connection

between the district and the operative facts, . . . the interests of justice require the transfer of [the]

action."); Cal. Innovations, 2006 WL 2864016, at *7 (transferring venue because, "[o]ther than

home forum, the Court finds a total absence of any factor to warrant litigation" in the Western

District).

Plaintiffs undoubtedly will attempt to support their effort to venue this case in New York on the grounds that New York is the headquarters of the Defendants.  Plaintiffs' purported concern for the convenience of Defendants' witnesses is belied by their own testimony in this case to date.  In support of Plaintiffs' Motion for Conditional Certification (Docket No. 30), each of the Plaintiffs and Opt-Ins submitted their own sworn testimony that their knowledge of their job duties was derived from their "firsthand experience and observation at each location at which [they] worked."  (Palacio Decl. ¶ 6; Dixon Decl. ¶ 6; Rocha Decl. ¶ 6; Cummings Decl. ¶ 6; Ford Decl. ¶ 6), (Docket No. 32-14, Exs. I, J, K, L and M).  Moreover, Plaintiffs argued that individuals at Defendants' headquarters are without knowledge as to their job duties because they never met or observed them performing those duties.  (Plaintiffs Memorandum of Law in Support of Motion for Conditional Certification, p. 6) ("To Plaintiffs' and Opt-In's Knowledge, no one from E*Trade's corporate headquarters ever watched them or any other [Relationship Managers] perform their duties in order to determine their exempt or non-exempt status.") (Docket No. 31).  Plaintiffs' own evidence confirms that the primary witnesses in this case will be Plaintiffs, Opt-Ins, and their direct supervisors and co-workers in the locations at which they worked.

Moreover, the allegation that the Defendants' headquarters are in this district does not weigh in favor of keeping this action here, especially considering that the convenience of the parties and witnesses and the interests of justice and trial efficiency strongly militate in favor of transfer.  See Amick v. Am. Exp. Travel Related Servs. Co., Inc., No. 09-civ-9780, 2010 WL 307579, at *2 (S.D.N.Y. Jan. 26, 2010) (transferring case to Middle District of North Carolina, finding that to be "the center of gravity" of the litigation because the plaintiff's direct supervisors and co-workers were all employed in Greensboro and the only connection to the Southern

District of New York was the allegation of a compensation policy that was allegedly crafted in the defendant's New York corporate headquarters).

### 5.     The Interests Of Justice And Trial Efficiency Support Transfer.

Public interest factors influencing the interests of justice also favor transfer in this case. See, e.g., Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd., 85 F. Supp. 2d 282, 306 (S.D.N.Y. 2000) (noting that the interest in avoiding the unfair imposition of jury duty on citizens of an unrelated forum weighed against the Southern District of New York).  Half of the Plaintiffs and Opt-Ins live and worked in Florida, and none of them live or worked in New York. Should their claims remain in court, they should be resolved by a Florida court.  This Court and the people of New York should not be burdened with expending the time and resources to adjudicate this primarily Florida-based dispute.

Further, the parties will likely reach a trial (if necessary) quicker in the Southern District of Florida, which has a significantly less congested civil docket.  For example, according to the Federal Judicial Caseload Statistics, in 2009 the Southern District had 23,407 pending civil cases, compared to 4,579 in the Southern District of Florida.  (Lynch Decl. ¶ 3, Ex. A) (Docket No. 18).  The average time a civil action in the Southern District of Florida takes to reach trial is 13.5 months less than in the Southern District of New York.  (Id.)  These factors weigh in favor of transfer.  Indian Harbor Ins. Co., 419 F. Supp. 2d at 407 (docket conditions or calendar congestion of both the transferee and transferor districts is a proper factor and is accorded some weight).

Moreover, Plaintiffs assert only federal claims under the FLSA.  They do not assert any New York state law claims and there can be no argument that this Court is more familiar with the issues of federal law than the Southern District of Florida.  Finally, because of the short time that this action has been on this Court's docket, and the lack of any formal development of the

record, a transfer will not disrupt the litigation, result in a waste of judicial resources or prejudice Plaintiffs.  See Zokaites v. Land-Cellular Corp., 424 F. Supp. 2d 824, 841 (W.D. Pa. 2006) (granting transfer, noting lack of a developed record and short period of pendency).

## IV.    **CONCLUSION**

Because each of the Plaintiffs agreed to arbitrate the claims they assert in this case, Defendants respectfully request that this Court compel each Plaintiff to arbitrate his claim pursuant to Section 4 of the FAA, and (i) transfer this case to the Northern District of California to effect the arbitrations or, alternatively, (ii) stay this action, pursuant to Section 3 of the FAA, pending Defendants' petition for arbitration in the Northern District of California.

Alternatively, in the unlikely event that the Court should determine that any of the arbitration agreements are invalid or unenforceable for any reason, Defendants respectfully request that the Court enforce the contractual forum selection clause and transfer each such Plaintiff to the district where he or they worked for the applicable E*TRADE entity.  Finally, in the unlikely event that the Court should decline to enforce the contractual forum selection clause, Defendants respectfully request that the Court transfer this case to the Southern District of Florida, which is the most convenient jurisdiction for this case given the location of the witnesses and documents that will be central to Plaintiffs' claims for overtime.

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

Dated:  September 3, 2010

By: s/ Sean P. Lynch
      Thomas A. Linthorst
      Sean P. Lynch
      502 Carnegie Center
      Princeton, New Jersey 08540
      (609) 919-6642
      Attorneys for Defendants
      E*TRADE Financial Corporation and
      E*TRADE Brokerage Services, Inc.